IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-01823-CYC

GD MANAGEMENT, LLC, and
SALOMON JUAN MARCOS VILLAREAL,

Plaintiffs,

v.

U.S. CITIZENSHIP AND IMMIGRATION SERVICES,

Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

**Cyrus Y. Chung, United States Magistrate Judge.**

The immigration laws give priority to foreign executives of multinational companies coming to the United States to continue their services to those companies or their affiliates. Plaintiff Salomon Juan Marcos Villareal contends that he is such an executive. But the services he seeks to offer are not to plaintiff GD Management, LLC ("GD Management"), who submitted his immigration petition, but to separate hotels with which GD Management contracted to provide management services. Defendant U.S. Citizenship and Immigration Services accordingly denied Marcos Villareal's bid to gain multinational-executive priority, and the plaintiffs move for summary judgment, arguing that such action was arbitrary or capricious. Because the statute in question aligns with the defendant's view, its cross-motion for summary judgment, ECF No. 34, is **GRANTED**, and the plaintiffs' corresponding motion, ECF No. 33, is **DENIED**.

## BACKGROUND

In August 2009, GD Management entered into an Asset Management Agreement with the owner of the Ritz-Carlton Hotel Gulch, charging GD Management's Chief Asset Manager with

creating the hotel's business plan, monitoring its performance, ensuring its regulatory compliance, overseeing its renovation projects, and handling its financial obligations. Administrative Record[1] ("A.R.") 897–901. The agreement assigned GD Management one percent of the hotel's revenue as compensation. *Id.* at 901.

The next year, GD Management Denver, LLC ("GD Denver"), whose sole member is GD Management, *see id.* at 912, 914, contracted with the Four Seasons Hotel Denver for GD Denver to oversee management of the hotel, including its hiring, training, salaries, and firing of personnel, its regulatory compliance, and its annual operating budgets. *Id.* at 918–21. In exchange, the hotel provided GD Denver an annual management fee of $500,000. *Id.* at 923.

Marcos Villareal, who seeks to come to the United States to fulfill these roles, owns 95% of GD Management. *Id.* at 896. GD Management has only a single U.S.-based employee. *Id.* at 789. Marcos Villareal also owns 96% of GD Apparel S.A. de C.V., a much larger Mexican textile company affiliated with GD Management, where he has been CEO and Chairman since July 2011. *Id.* at 799, 1227.

On January 27, 2016, GD Management filed a Form I-140 with the defendant, seeking an EB-1C visa, "a first-preference, employment-based visa," *Yogi Metals Grp. v. Garland*, 38 F.4th 455, 457 (5th Cir. 2022), available to certain multinational executives and managers, *see* 8 U.S.C. § 1153(b)(1)(C). It also filed a Form I-485 requesting permanent residency status for Marcos Villareal. *See* A.R. 787–794. After a series of denials and appeals to the defendant's Administrative Appeals Office ("AAO"), *see id.* at 536–46, 609–15, 775–80, the AAO finally denied GD Management's petition on May 29, 2024, reasoning that because the executive or

[1] ECF Nos. 30 through 30-24 comprise the Administrative Record in this case.

managerial duties the petition asserted were for the hotels rather than for GD Management, the petition did not meet the standards for an EB-1C visa. A.R. 1–6.

A month later, the plaintiffs filed this action. ECF No. 1. The amended complaint asserts a single violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), alleging that the defendant's actions were arbitrary and capricious. ECF No. 14 ¶¶ 55–60. The parties consented to the jurisdiction of a magistrate judge, ECF No. 21, and these cross-motions for summary judgment followed.

## ANALYSIS

In an APA case, on summary judgment, "[i]nstead of considering whether there are genuine disputes of material fact, the district court 'sits as an appellate tribunal.'" *Karim v. Allen*, No. 21-cv-02861-WJM-KLM, 2023 WL 4624896, at *1 (D. Colo. July 19, 2023) (quoting *Am. Bioscience Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001)). "'The entire case on review is a question of law,' and a court should only consider 'arguments about the legal conclusion to be drawn about the agency action.'" *Id.* (quoting *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993)). "This review is, therefore, based on 'the administrative record already in existence' at the time of the agency action." *Id.* (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam)).

The plaintiffs contend that the record evinces an arbitrary and capricious decision. "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Relevant here, a "reviewing court shall . . . hold unlawful and set aside agency actions, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A). "Under § 706(2)(A), an agency's action is 'arbitrary and capricious if the agency . . . entirely failed to consider an important aspect of the

problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Biodiversity Conservation All. v. Jiron*, 762 F.3d 1036, 1060 (10th Cir. 2014) (quoting *Utah Envt'l Cong. v. Bosworth*, 443 F.3d 732, 739 (10th Cir. 2006)) (internal quotation marks omitted). "Likewise, an agency's decision is arbitrary and capricious if the agency failed to base its decision on 'consideration of the relevant factors,' or if 'there has been a clear error of judgment' on the agency's part." *Id.* (quoting *Bosworth*, 443 F.3d at 739). "A presumption of validity attaches to the agency action and the burden of proof rests with the parties who challenge it." *Mahalaxmi Amba Jewelers v. Johnson*, 652 F. App'x 612, 615 (10th Cir. 2016) (quoting *Ron Peterson Firearms, LLC v. Jones*, 760 F.3d 1147, 1162 (10th Cir. 2014)). The plaintiffs do not carry that burden here.

A petitioner seeking an I-140 immigrant visa as a multinational executive or manager must demonstrate that "in the 3 years preceding the time of [his] application for classification and admission into the United States," he "has been employed for at least 1 year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof and [he] seeks to enter the United States in order to continue to render services to the same employer or to a subsidiary or affiliate thereof in a capacity that is managerial or executive." 8 U.S.C. § 1153(b)(1)(C). It is undisputed that Marcos Villareal had been employed for at least one of the last three years by a company and sought to enter the United States to render services to an affiliate of the company, as the defendant concedes that GD Management is an affiliate of GD Apparel S.A. de C.V. *See* A.R. 199. The only dispute is whether Marcos Villareal's prospective employment in the United States would render services to an affiliate of GD Apparel S.A. de C.V. in an executive capacity.

According to the defendant, it would not. It decided that he "would likely be primarily engaged in the provision of professional services" — management of the hotels in question — "rather than his claimed executive-level role with authority over a multi-layered organization including hundreds of employees." A.R. 5. It reasoned that "[b]y its own admission," GD Management "states that" it "had few employees — in fact, the record shows that only one employee was claimed in the petition at the time of filing." *Id.* The defendant recognized that Marcos Villareal's duties involved managing people, but because they were "those working for the 'asset,' i.e., the client, in an asset management agreement, not those working for" GD Management "itself," the provision of such management services would not make Marcos Villareal's employment with GD Management executive-capacity employment. *Id.* at 6.

None of that was arbitrary or capricious. The Immigration and Nationality Act defines "executive capacity" as:

> an assignment within an organization in which the employee primarily—
>
> (i) directs the management of the organization or a major component or function of the organization;
>
> (ii) establishes the goals and policies of the organization, component, or function;
>
> (iii) exercises wide latitude in discretionary decision-making; and
>
> (iv) receives only general supervision or direction from higher level executives, the board of directors, or stockholders of the organization.

8 U.S.C. § 1101(a)(44)(B). In determining whether employment meets these criteria, USCIS may consider the organization's "staffing levels . . . as a factor in determining whether an individual is acting in a managerial or executive capacity" so long as it "take[s] into account the reasonable needs of the organization, component, or function in light of the overall purpose and stage of development of the organization, component, or function." 8 U.S.C. § 1101(44)(C). In other

words, "the USCIS may properly consider an organization's small size as one factor in assessing whether its operations are substantial enough to support a manager." *Fam. Inc. v. USCIS*, 469 F.3d 1313, 1316 (9th Cir. 2006); *see Rep. of Transkei v. INS*, 923 F.2d 175, 178 (D.C. Cir. 1991). Thus, GD Management's one-employee size supports the defendant's conclusion that Marcos Villareal's prospective employment would not be in an executive capacity.

In addition, "[a]n employee who primarily performs the tasks necessary . . . to provide services is not considered to be employed in a managerial or executive capacity." *In re Church Scientology Int'l*, 19 I. & N. Dec. 593, 604 (B.I.A. 1988). Here, Marcos Villareal's prospective tasks — hotel management duties — were the very "services" to be rendered under the contracts between GD Management, GD Denver, and the hotels. USCIS's decision not to view such tasks as the provision of contractual services rather than executive-capacity employment was therefore not arbitrary or capricious.

The plaintiffs protest. Employment in an "executive capacity," they say, relates to tasks done for "an organization" and, as such, Marcos Villareal's tasks vis-à-vis the hotels ought to qualify. ECF No. 35 at 4. On their view, GD Management, GD Denver, and the hotels together comprise a single organization and Marcos Villareal's duties are classically executive in that organization, given that he would manage hundreds of hotel employees.

The argument has some superficial appeal. After all, an "'organization' . . . includes a group of persons, whether or not incorporated, permanently or temporarily associated together with joint action on any subject or subjects," 8 U.S.C. § 1101(a)(28), and GD Management, GD Denver, and the hotels are associated together with joint action on the hotels' management. In the abstract, then, those entities could be read to form a single organization.

In context, though, this construction makes little sense for EB-1C eligibility. The statute restricts such eligibility to aliens who "seek[] to enter the United States in order to continue to render services to the same employer or to a subsidiary or affiliate thereof in a capacity that is managerial or executive." *Id.* § 1153(b)(1)(C). The plaintiffs' view separates this into two requirements: first, that the alien be employed by the same employer as his employer abroad, or a subsidiary or affiliate thereof; and second, that the alien be employed in an executive capacity by some organization, even if it is not an affiliate of his employer abroad. *See* ECF No. 35 at 5–6. But the plain language of section 1153(b)(1)(C) makes the latter subordinate to the former: "in a capacity that is managerial or executive" modifies the "services" rendered in section 1153(b)(1)(C); it does not exist independent of the "services" in the first part of the clause. Because the "services" must be rendered to the employer or its subsidiary or affiliate, the "capacity that is managerial or executive" must also exist within one of those alternatives. And an association existing purely because of contractual relationships is not a qualifying affiliation. *See In re Schick*, 13 I. & N. Dec. 647, 649–50 (BIA 1970). The overall statutory context therefore does not support the plaintiffs' view.

Nor does the "an" in the definition of "executive capacity" change that calculus. Noting that copying and pasting the statutory definition of executive capacity into section 1153(b)(1)(C) produces an eligibility criterion for aliens who "seek[] to enter the United States in order to continue to render services to the same employer or to a subsidiary or affiliate thereof in an assignment within an organization," ECF No. 35 at 5; *see* 8 U.S.C. §§ 1101(a)(44)(B), 1153(b)(1)(C), the plaintiffs contend that the identity of the organization is immaterial. But the indefinite article cannot bear the weight the plaintiffs put on it. Its presence in the definition simply specifies that executive-capacity work must be done inside of an organization; it does not

expand the scope of the "services to the same employer" to executive assignments with any employer.

Nor does the canon against surplusage compel a different result. It expresses courts' "general reluctan[ce] to treat statutory terms as surplusage," *Mullin v. Al Otro Lado*, 146 S. Ct. 2079, 2092 (2026) (citation omitted), but it "is not an iron rule." In the end, it "is useful, but it is 'subordinate to the cardinal canon that a legislature says what it means and means in a statute what it says there.'" *Id.* (quoting *U.S. Postal Serv. v. Konan*, 607 U.S. 391, 406 (2026)). The short of it is that EB-1C eligibility depends on the "services to the same employer or to a subsidiary or affiliate thereof" that the alien renders being "in a capacity that is managerial or executive." 8 U.S.C. § 1153(b)(1)(C). Executive-capacity services rendered to a different employer are not "to the same employer or to a subsidiary or affiliate thereof," and the definition of executive capacity is not meant to indicate otherwise. At the very least, the Court cannot say that it is arbitrary, capricious, or otherwise contrary to law for the defendant to so hold.

## CONCLUSION

For the foregoing reasons, the defendant's Cross-Motion for Summary Judgment, ECF No. 34, is **GRANTED**. The plaintiffs' Motion for Summary Judgment, ECF No. 33, is **DENIED**. Judgment shall enter for the defendant. The Clerk of the Court is requested to close this case.

Dated this 17th day of September, 2026, at Denver, Colorado.

BY THE COURT:

Cyrus Y. Chung
United States Magistrate Judge